UNITED STATES v. POLER. See Case No. 16,075.

## Case No. 16,062.

### UNITED STATES v. POLHAMUS et al.

[13 Blatchf. 200.] [1]

Circuit Court, S. D. New York. Nov. 19, 1875.

NEW TRIAL — WEIGHT OF EVIDENCE — ACTION TO RECOVER EMBEZZLED MONEYS.

1. A paymaster in the army speculated in stocks, employing the defendants as his brokers. To make good his losses, and pay his obligations to the defendants, he embezzled funds of the United States, intrusted to him, and remitted to the defendants at least $358,000 of government funds, of which sum at least $93,000 had been sent in his official checks upon the assistant treasurer of the United States, in the city of New York, payable to the order of the defendants, and the residue in currency, or in checks on private bankers or on national banks. This suit was brought to recover the amount so received by the defendants, on the ground that they knew that the money was the money of the government, and had been improperly used, or that they received the money with notice of facts from which they could only properly infer that the paymaster was unlawfully expending the funds of the government in payment of his private debts. The jury found for the defendants. On a motion for a new trial, made by the plaintiffs, on the ground that the verdict was so against the evidence, or against the weight of evidence, that it was apparent that the jury were influenced by mistake, sympathy or prejudice: *Held*, that the motion must be granted.

2. The motion would not be granted if the claim were solely for the amount sent otherwise than in official checks.

3. The jury were properly charged, that, where a trustee delivers, in payment of his individual debt, property which is stamped with the insignia of ownership as trustee, the creditor takes the property with notice of the trust, and at his peril, if he does not make suitable inquiry as to the right of the trustee thus to dispose of the property.

4. The defendants, in explanation, gave evidence that their business was large, and that their time was so engrossed that they could not examine checks, and that they endorsed checks without looking at the face of the check, and that, therefore, they did not know that these were sub-treasury checks. The court was of opinion that the case, so far as it concerned such checks, turned, in the minds of the jury, on such evidence, and that the magnitude of the amount involved in the suit, and the serious detriment which would accrue to the defendants from a verdict against them, while such a verdict would be of very slight value to the plaintiffs, in consequence of the insolvency of the defendants, had some influence on the minds of the jury.

[1] [Reported by Hon. Samuel Blatchford, District Judge, and here reprinted by permission.]

[This was an action by the United States against James A. Polhamus and Eugene J. Jackson to recover a sum of money received by the defendants, which had been embezzled from the government. Heard on a motion for a new trial.]

Henry E. Tremain, Asst. U. S. Dist. Atty. Roger A. Pryor, for defendants.

SHIPMAN, District Judge. Major J. Ledyard Hodge, a paymaster in the United States army, commenced, in the year 1863, to speculate in stocks in the city of New York, employing the defendants as his brokers. These stock speculations were at first of comparatively small amount, but increased, after the year 1867, until they had attained very large magnitude. From time to time they resulted very disastrously to Major Hodge, who, in order to make good his losses, and pay his obligations to his brokers, embezzled the funds of the United States, with which he was intrusted, until the deficit was discovered in the month of September, 1871, when he was dismissed from office, and pleaded guilty to charges of embezzlement. It was satisfactorily ascertained, either from his own confession, or by evidence derived from an examination of his accounts, that at least $358,000 of government funds had been remitted by him to his brokers, of which sum at least $93,000 had been sent in his official checks upon the assistant United States treasurer, in the city of New York, and the residue had been sent in currency, or in checks upon private bankers, or upon national banks. The checks upon the assistant treasurer bore respectively the following dates, and were for the following amounts: December 15th, 1865, $5,000; September 25th, 1869, $20,000; September 27th, 1869, $13,000; September 28th, 1869, $15,000; and July 18th, 1870, $40,000. An action of indebitatus assumpsit was thereupon commenced by the United States against the defendants, for the recovery of the amount which had been thus received by them, upon the ground that they knew that the money was the money of the government, and that it had been improperly used by Major Hodge, or that they received the money with notice of facts from which they could only properly infer that the trustee was unlawfully expending in payment of his private debts the funds of his cestui que trust. This action was tried before a jury, who returned a verdict for the defendants. The government thereupon filed a motion for a new trial, upon the ground that the verdict was so against the evidence, or against the weight of evidence, in the cause, that it was apparent that the jury were influenced by mistake, sympathy or prejudice, and upon the ground that the charge and rulings of the court were erroneous.

Upon the point that the verdict was against evidence, it is not strenuously urged that, as to the amount which was sent in currency, or in private checks, the evidence against the defendants was of such uniform character as to demand a new trial, though it is claimed that the verdict was against the weight of evidence in respect to those sums; but it is claimed that, as to the $93,000 which was sent and received in official drafts upon the sub-treasury, the jury mistook the charge of the court, and rendered a verdict palpably in violation of the evidence which was introduced. If the claim of the government against the defendants had been solely for the amount which was sent in currency, or in unofficial checks, I do not think that a court would be justified in directing a new trial. As to the amount which was sent in official checks, the case rested upon different principles from those which appertained to the residue of the plaintiffs' claim. These checks were the checks of Major Hodge, as paymaster of the United States army, upon the well known depository of the funds of the government, to the order of the defendants, and were sent directly to the payees, in payment of the private debts of the drawer, and were collected and credited upon the account of Major Hodge. Upon this part of the case, the court charged the jury in conformity with the rule of law, that, when a trustee delivers, in payment of his individual debts, property which is stamped with the insignia of ownership as trustee, the creditor takes the property with notice of the trust, and, if it is received without making suitable inquiry as to the right of the trustee thus to dispose of the property of the cestui que trust, the recipient takes it at his peril. He is guilty of negligence if no suitable inquiry is made. The general rule was laid down with sufficient fullness. But, the fact that the property bears upon its face the evidence that it is owned by the seller or the payer, as trustee, is not conclusive upon the liability of the defendant, who is always at liberty to show that he did make suitable inquiry. If he receives property which is known to be trust property, he is prima facie liable to the cestui que trust, and the burden is thrown upon the defendant of explaining his conduct to the satisfaction of the jury. The defendants in this case offered evidence which was proper to go to the jury in explanation and justification of their acts. They gave evidence that their business during the period which was included in their transactions with Major Hodge, was enormously large; that their time was so engrossed that they could not examine checks; that checks were endorsed, when presented to them, by the person whose business it was to make the deposits, without examination or without reading, or looking at the face of, the check; and, therefore, that they did not know that these were sub-treasury checks. I have reason to know that the case, so far as it concerned this class of remittances, turned, in the minds

of the jury, upon the evidence which was thus offered by the defendants, of their want of knowledge upon whom the checks were drawn. I was of the opinion, at the time of the trial, that the case was not such as to justify a direction to the jury to find a verdict for $93,000 in favor of the plaintiffs. There was a question of fact which involved a large amount of property, and which involved, to some extent, the character of the defendants, which was proper to be submitted to a jury. I am still of the opinion that it should have been so submitted, or else that the principle of trial by jury is not to be regarded. But, I am of opinion, after careful consideration of the case, that the evidence was such that the supervisory power of a court should be interposed, and that the facts should be submitted to the scrutiny of another jury. It is not necessary for me to consider the subject of new trials upon the ground that the verdict was against the weight of the evidence. The principles of law are well known. It is sufficient for me to say, that if the plaintiff in this case was an individual cestui que trust, whose property had been thus placed by an unworthy trustee in the hands of the defendants, I should not feel satisfied that my duty had been discharged until I had remitted the question to the test of a new trial; and, although the treasury of the government is in the annual receipt of millions, and a favorable verdict for the amount which is at stake will perhaps be of no serious benefit to the United States, while a verdict against the defendants may have the effect of permanently crippling those whom financial reverses have already rendered insolvent, yet it is the duty of a court to regard solely its obligations as a court of justice, and not to be swayed by the comparative effect of its decisions upon the parties. The magnitude of the amount which is involved in this case, and the serious detriment which would accrue to the defendants from a verdict against them, while such a verdict would be of very slight value to the plaintiffs, I think had some influence upon the minds of the jury.

I have doubted whether the discretionary power of the court should be exerted in favor of a new trial, when an exceedingly intelligent and capable jury had once rendered a verdict, after an absence of only fifteen or twenty minutes, and when, in consequence of the insolvency of the defendants, a different verdict, if it should be rendered, would in all probability be of no pecuniary value to the United States, but I am satisfied that these considerations are subordinate to those which I have already stated.

The plaintiffs also moved for a new trial upon the ground of error of law in the charge and rulings of the court. It is not necessary to consider these questions, in view of the disposition which has been made of the motion

The motion for a new trial is granted.